ROGER J. WAYBRIGHT, Associate Judge.
The essential background of this case has been recited in previous opinions of this court and the supreme court, on one or .another of the several occasions that the .case has been considered,[1] but repetition and amplification here are necessary to put •.the question involved in focus.
In 1936 L. L. Davis and Annie Davis, his wife, executed a mortgage on the lands involved herein. At that time L. L. Davis apparently was competent. In 1940 he was adjudged non compos mentis and committed to the state hospital for the insane. In 1943 the mortgagee instituted a suit to foreclose the mortgage. At that time, although still incompetent, L. L. Davis had been released from the state hospital, and was in the custody of his wife, Annie Davis. No guardian of the person or property had been appointed for L. L. Davis, and apparently none was appointed until 1955, when the appellant Georgia Olena Brown was so appointed.
In that mortgage foreclosure suit, the original sheriff’s return showing service of the summons on L. L. Davis and Annie Davis read:
“Came to hand this 22nd day of April 1943, and executed same in Bay County, Florida by delivering a true copy of this summons in chancery to the within named defendant
L. L. Davis
Anne Davis
with the words ‘Copy of Summons in Chancery’ written thereon, together with the name of complainant’s solicitor, and at the same time exhibiting the original of such summons to such defendant.”
L. L. Davis did not appear in the suit. A guardian ad litem was appointed for him on motion of the plaintiff-mortgagee. The guardian ad litem was not served with process, but he appeared voluntarily in the suit, filing an answer in which he stated that he had been unable to discover any defense available to L. L. Davis.
The foreclosure proceedings were completed. Annie Davis, wife of L. L. Davis, bought in the property at the foreclosure sale. Annie Davis thereafter conveyed the property to the appellees or their predecessors in title.
Fifteen years later, in 1958, the appellant, Georgia Olena Brown, as guardian of L. L. Davis, an incompetent by reason of insanity, brought suit against the ap-pellees to impose a constructive trust on the property, now owned by the appellees.
In her second amended complaint against the appellees, the appellant alleged that, at the time the mortgage foreclosure proceeding took place, L. L. Davis was incompetent. The appellant further alleged that: “The service of process personally in the above suit was had upon L. L. Davis and wife, Annie Davis or Mrs. L. L. Davis. Either L. L. Davis was served by virtue of the service upon his wife, Annie Davis, or he was improperly served under the statutes in force in the state of Florida at that time. If Annie Davis, the wife of L. L. Davis, was acting as guardian of L. L. Davis *307 without an order of court so that she could accept service for him, then it was her duty as such guardian or as his wife or as the person to whom he had been released or one of the defendants who has signed the mortgage and note, to pay the indebtedness and redeem the property. The said Annie Davis or Mrs. L. L. Davis did neither and after a final decree was entered in the foreclosure proceedings the said Annie Davis purported to purchase the mortgaged property of her husband, L. L. Davis, the judicially declared incompetent who was at that time in her custody and control although without a court order.”
The appellant went on, in her complaint, to allege that “by virtue of the relation of trust and confidence which existed between L. L. Davis, the incompetent and his wife, Annie Davis, it was inequitable and unconscionable for the said Annie Davis to purchase the real property involved in this proceeding and that her purported purchase only conveyed the legal title to her as a constructive trustee for the incompetent, L. L. Davis.” The appellant asked that the appellees be decreed to hold the title in trust for L. L. Davis, and be ordered to convey it to him.
To that complaint, the appellees filed answers, counter-claims and cross-claims. Among other defenses, at least two.of the appellees denied that L. L. Davis was incompetent at the time of the mortgage foreclosure proceeding, as well as most of the other allegations of the complaint that are mentioned above.
The appellant then filed a “motion for summary decree.” That motion contained five numbered paragraphs asserting reasons why “no genuine issue of material fact remains in this cause and that plaintiff is entitled to a summary decree as a matter of law.” The first two paragraphs alleged that title to the property had been vested in L. L. Davis by virtue of a court decree entered in 1936, and that L. L. Davis was adjudged incompetent in 1940 and no guardian of his person or property was appointed until 1955. Paragraph 3 of that motion asserted:
“3. It affirmatively appears from the certified copy of the sheriff’s return in the case of A. M. Douglas -vs-L. L. Davis and wife, Annie Davis (Defendant’s Exhibit ‘A’) that the defendant L. L. Davis in said case was not served in compliance with Section 47.25 Florida Statutes and that the court in said case never acquired jurisdiction of the said L. L. Davis. That the final decree in said case and all subsequent proceedings are void.”
The remaining two paragraphs of that motion asserted that if Annie Davis was a “guardian de facto” of her husband she was prohibited from purchasing his property at a judicial sale “by virtue of Section 475.14” and by operation of law “became a constructive trustee and all later transferees only took title as constructive trustees” ; and that “by virtue of Section 95.20 Florida Statutes, no period of limitations, less than 30 years could deprive the plaintiff L. L. Davis of his right to sue for the recovery of his property.”
No affidavits, depositions or evidence were.offered or filed, although the summary decree entered pursuant to that motion recited that the chancellor considered “affidavits”.
On January 28, 1959, the chancellor entered a “summary decree.” That decree read:
“Summary Decree
“This cause coming on before the Court upon the motion of the plaintiff for a summary decree pursuant to Rule 1.36 Florida Rules of Civil Procedure, and the Court having considered the pleadings, exhibits and affidavits and being now fully advised, it is Ordered, Adjudged and Decreed That said motion be, and the same is, hereby granted based upon Paragraph 3 of said motion.
*308 "Further Ordered that the defendants each are allowed a period of thirty (30) days to file any desired amendment to their counterclaims heretofore filed in the cause, and that the plaintiff is allowed fifteen (IS) days thereafter to plead as he may be advised.”
The appellees took an interlocutory appeal from that summary decree to this court.
The appellant moved this court to dismiss that interlocutory appeal, on the ground that the summary decree appealed from was a final decree rather than an interlocutory decree. This court, in an unpublished order without opinion, denied that motion, referring to that denial in its published opinion.
Much of the subsequent litigation in this case has obviously stemmed from the appellant’s professed conviction that that summary decree was a final decree. It was not, and in what is probably- a vain hope that an express statement to that effect may dilute the enthusiasm of the appellant for further interlocutory appeals, the point will be discussed here, before resuming the chronology.
An order merely granting a motion for summary decree is not itself technically a final decree.[2]
The summary decree entered by the chancellor purported to rule on only one facet of the pending litigation: presuming that L. L. Davis was incompetent when the summons was served in the mortgage foreclosure proceeding, whether the original sheriff’s return showed that the summons was served in a manner prescribed by Florida Statutes § 47.25, F.S.A.
A final decree decides and disposes of the cause on its merits, leaving no question open for judicial determination except the execution or enforcement of the decree if necessary. The distinguishing feature between an interlocutory decree and a final decree is that an interlocutory decree is rendered in the middle of a cause and does not finally determine or complete the cause, while a final decree determines the rights of the parties and disposes of the cause on its merits, leaving- nothing more to be done in the cause as distinguished from beyond the cause. The test of a final decree is whether the judicial labor is at an end.[3]
Applying that well-established test, the summary decree was not a final decree.
The term “summary final decree” was inadvertently used in the decision of this court ruling on that first interlocutory appeal, and must now be acknowledged to be an incorrect term. In their brief on the current appeal, the appellees candidly concede that the parties engendered use of that term by this court by the arguments they employed in their briefs on that first appeal. - Doubtless in an effort to impress this court with the gravity of their situation if that summary decree were not overturned, the appellees spoke of it as having the effect of voiding the mortgage foreclosure proceeding and vesting title to the property in L. L. Davis.[4] The appellant *309 gleefully took up the refrain, in her brief.[5] This court recited in its published decision that the appellant (appellee on that appeal) “moved in this Court to dismiss this appeal on the ground that it was on appeal from a final decree, not an interlocutory order, which motion was denied”, but nevertheless also referred to the decree as a “summary final decree.” It was not a final decree, but ever since the appellant bias continued to contend that it was, even while taking repeated interlocutory appeals.
This court, and the supreme court, have upon several occasions decided that that summary decree was not a final decree, without much discussion of the specific point. It is to be hoped that this over-long discussion, also unnecessary to a decision on the specific point presented on this appeal, will induce the appellant to discontinue taking interlocutory appeals as a vehicle for raising the same point.
To return to the chronology:
The chancellor had granted that summary decree on the ground that the sheriff’s return in the mortgage foreclosure suit showed that L. L. Davis, who had been adjudged incompetent, was not served with process in compliance with Florida Statutes § 47.25, F.S.A.[6]
This court, expressly limiting itself to the narrow issue of whether, from the pleadings and exhibits attached thereto, there was no genuine issue of material fact as to the invalidity of the service of summons as reflected by that original sheriff’s return of service thereof, reasoned that the plain import of the return was that a copy of the summons was served on each of the defendants L. L. Davis and Annie Davis severally, and that, since Annie Davis was the “person in whose care or custody” L. L. Davis was, and was *310 served with a copy of the summons, the failure to serve her with a second copy did not render the service defective. Concluding that it therefore could not be said that, as a matter of law on the record before the chancellor, the service of process on L. L. Davis was invalid, this court reversed the summary decree for further proceedings.[7]
On Certiorari, the supreme court, in a 4-to-3 decision,[8] quashed the decision of this court, holding that strict compliance with the statute was necessary:
“It was necessary, then, either to read the summons to the incompetent and his guardian or custodian or to deliver to each of them a copy.
“On the face of the return we have quoted, it appears that the summons was executed by delivery of one copy to the two mortgagors who had become defendants and by exhibiting to them the original * * *
“Strict construction will not permit ignoring the requirement of service on the incompetent in addition to service on the one having him in custody. The service on both suggests duplication but it is a duplication commanded by the law.
Neither the decision of this court, nor the decision of the supreme court quashing the decision of this court, contained any implication that it was necessary, in order to comply with the statute, for the sheriff’s return to recite that a copy of the summons was served on a custodian of an incompetent in his or her capacity “as the person in whose care or custody such insane or incompetent person is.” All that the decision of either court required was that a copy be served on a person who did actually occupy that capacity, not that the sheriff’s return' state that the person served occupied that capacity. The only point of difference between the two decisions was that the supreme court considered it necessary that’ the person occupying that capacity be served’ with a copy .separate from the copy served' on the incompetent — “to deliver to each of them a copy” — when service by delivery of copies as distinguished from service by reading the summons to them is utilized..
Following that decision of the supreme-court, the appellees filed in this court a petition pointing out that this court in its. decision, and the supreme court in its decision quashing the decision of this court,, had dealt only with the question of the sufficiency of the service of process on L. L.. Davis as reflected by the sheriff’s return;: that under Florida Statutes § 47.47, F.S.A.[9]' a sheriff’s return is “amendable so as to state the truth at any time”; and petitioning-this court “to remand this cause for the purpose of receiving proof as to whether or not copies of the summons in chancery * * * were in fact served upon each of the defendants, L. L. Davis and Annie Davis.” That petition was denied by this court,, in an unpublished order without opinion,, on May 16, 1960.
Upon receipt of the mandate from the supreme court, its opinion was substituted: *311 for the opinion of this court, and the mandate of this court was issued on May 16, 1960, returning jurisdiction of the cause to the circuit court.
About two months thereafter, the appel-lees moved in the circuit court for leave to amend the sheriff’s return to state the truth as allegedly revealed in the deposition of the deputy sheriff who had served the summons in 1943. That motion was based on Florida Statutes § 47.47, F.S.A., above mentioned.
The chancellor (successor to the previous chancellor) held that he was without authority or jurisdiction to entertain any proceedings to amend the-sheriff’s return because the decision of the supreme court was res judicata on that question.
An interlocutory appeal from that order was taken by the appellees to this court.
The appellant petitioned the supreme court for a writ of prohibition to prohibit the appellees from prosecuting, and this court from entertaining, that interlocutory appeal. The supreme court denied the petition without opinion.[10]
In its decision of March 23, 1961, on that appeal, 128 So.2d 8, this court held that the chancellor’s assumption was erroneous, because the question of amending the sheriff’s return had not been before this court or the supreme court. The chancellor’s order was reversed and the cause remanded to the circuit court for further proceedings including consideration of the appellees’ motion on the merits.[11] The supreme court denied certiorari on July 14, 1961, 133 So.2d 321.
On October 5, 1961, the appellant took another interlocutory appeal to this court, from an order of the circuit court denying as premature the appellant’s “petition for writ of assistance” wherein the appellant sought entry of an order directing the ap-pellees to deliver to the appellant possession of the property. On motion of the appel-lees, that appeal was quashed, without opinion, by this court on March 7, 1962.[12]
On June 16, 1962, the appellant filed in the supreme court a motion for an order pursuant to Florida appellate rule 3.9, asking “enforcement of its mandate” previously issued, presumably by preventing “a hearing for the taking of testimony” scheduled by the circuit court. The supreme court’s “extraordinary powers” were invoked. The supreme court denied that motion on July 3, 1962.[13]
On June 28, 1962, the chancellor heard the testimony of the sheriff [at that time deputy sheriff] who had served the summons 19 years before. His memory of that long-ago routine chore was virtually nonexistent. He testified mainly that, when he made a return such as the one he had made in the mortgage foreclosure case, it meant that he. had followed his “custom” of delivering a copy of the summons to each of the persons named, L. L. Davis and Annie Davis, and reading the summons to both of them. He testified further that he could not swear that L. L. Davis and Annie Davis were together when he served the summons on them, “but to the best of my recollection, they was both there at the house together”; that he did not know whether L. L. Davis was then incompetent, nor did he know whether L. L. Davis was in the custody and control of Annie Davis.
At the conclusion of his testimony, after requesting that certain deletions be first made from an amended return presented to him by the appellees, he signed an amended return that read:
“I hereby certify that there came into my hands on the 22nd day of April, 1943, a true copy of this summons in *312 chancery and that I, on said date, executed the same in Bay County, Florida, by delivering a true copy of this summons in chancery to L. L. Davis and that I likewise served a true copy of this summons on Annie Davis, wife of L. L. Davis, with the words ‘copy of summons in chancery’ written thereon, together with the name of complainant’s solicitor, and that I did at the same time exhibit the original of said summons to the said L. L. Davis, and to Annie Davis, the wife of the said L. L. Davis, and read to each of them the original summons in the presence of each other.
The chancellor received that amended return in evidence.
On November 1, 1962, the chancellor entered an order in the circuit court reciting that the testimony of the deputy sheriff who had served the summons had been taken, and an amended return made by him was admitted into evidence; finding that the service of process as evidenced by that amended return and supported by that testimony was in accordance with Florida Statutes § 47.25, F.S.A., so that the circuit court acquired jurisdiction of L. L. Davis in the mortgage foreclosure proceeding “whether the said L. L. Davis was then still under judgment of incompetency or not”; finding that the summary decree entered on January 28, 1959, “was improvidently entered” ; and setting aside that summary decree.
The appellant took an interlocutory appeal from that order to the supreme court, which transferred the appeal to this court. The question now before this court is whether the chancellor erred in entering that order.
As was mentioned above, in her complaint filed in the circuit court the appellant alleged that “after a final decree was entered in the foreclosure proceedings the said Annie Davis purported to purchase the mortgaged property of her husband, L. L. Davis, the judicially declared incompetent who was at that time in her custody and control although without a court order” [emphasis supplied].
In their brief on the first appearance of this case in this court, the appellees (who-were appellants then) stated “Point I” involved as being whether the circuit court acquired jurisdiction of L. L. Davis when the deputy sheriff “delivered a copy thereof to the defendant wife in whose custody he was” [emphasis supplied], and in their written argument thereon pointed to the above-quoted allegation in the amended! complaint as constituting an admission that L. L. Davis was in his wife’s custody when the summons was served. In her brief, the appellant (who was the appellee then) took no issue with that statement.
For that reason, when the opinion of this-court was written, included in the recitals of the factual background was the statement that, at the time the mortgage foreclosure proceeding was instituted in 1943, “although still incompetent, L. L. Davis had' been released from the State Hospital and was in the custody of his wife, Annie Davis” [emphasis supplied].
When the appellant applied to the supreme court for a writ of certiorari, the appellees repeatedly made similar statements in their brief in that court, pointing again to the appellant’s allegation in her complaint; and again the appellant took no issue with those statements. For that reason, doubtless, in the majority opinion of the supreme court quashing this court’s decision, Annie Davis was referred to as “custodian” of L. L. Davis; and in the minority dissenting opinion it was stated that “It is admitted in the instant case that, at the time of the service of process, L. L. Davis was an incompetent in the custody of his wife, Anne Davis.”
The only suggestion to the contrary was in the appellant’s reply brief on the current appeal, when for the first time she made the cryptic statement “We point out that there is no indication anywhere in this record that L. L. Davis lived in the same *313 house, with his wife after he was released from the insane asylum.” And even that veiled remark is no longer before this court, for at the oral argument before this court the appellant withdrew her reply brief, to which a motion to strike had been addressed by the appellees, rendering a decision on that motion unnecessary.
This court must, therefore, approach the problem of the validity of the service of the summons, as reflected by the amended .sheriff's return of service, on the premise that at that time, if L. L. Davis was incompetent, Annie Davis was the “person in whose care or custody such insane or incompetent person may be,” within the meaning of Florida Statutes § 47.25, F.S.A.
From that premise to the conclusion that the service of the summons was properly •made is a short step indeed, for the amended sheriff’s return clearly recites that a copy •of the summons was delivered to L. L. Davis, another copy was delivered to Annie Davis, and the original summons was read to both. Thus, if L. L. Davis was in fact incompetent at the time, both methods of •service prescribed by the statute for service of summons on an incompetent were ■utilized, and the objection found valid by the supreme court to the method of service •reflected by the original sheriff’s return— that only one copy of the summons was ■delivered to both — was doubly overcome.
The service of the summons being proper, the chancellor’s order appealed from is without error. Summons had been validly served on L. L. Davis whether he was or was not incompetent at the time, and the • chancellor had the authority to set aside an interlocutory summary decree entered by his predecessor to the contrary, after the ■ amended sheriff’s .return was filed. If that summary decree had been a final decree, the ■chancellor could not have done so, of course.
The chancellor’s order of November 1, 1962, appealed from is affirmed, and the cause remanded to the circuit court for further proceedings consistent with this opinion.
STURGIS, Acting Chief Judge, and T. FRANK HOBSON, Jr., Associate Judge, concur.

. See Mitchell v. Brown, 114 So.2d 178 (D.C.A.1, Fla., 1959); Brown v. Mitchell, 119 So.2d 385 (S.C.Fla., 1900); State ex rel. Brown v. Wigginton, 125 So.2d 881 (S.C.Fla., 1960); Mitchell v. Brown, 12S So.2d 8 (D.C.A.1, Fla., 1961).

. Renard v. Kirkeby Hotels, 99 So.2d 719, 720 (D.O.A.3, Fla., 1958); Elliott v. Lazar, 104 So.2d 618 (D.C.A.2, Fla.1958); Chastain v. Embry, 118 So.2d 33 (D.C.A. 2, Fla., 1960); Cruden v. State Bank of Apopka, 136 So.2d 357 (D.C.A.2, Fla., 1961); Stadler v. Cherry Hill Developers, Fla.App., 150 So.2d 468.

. Blount v. Hansen, 116 So.2d 250, 251 (D.C.A.2, Fla., 1959); Cruden v. State Bank of Apopka, 136 So.2d 357, 358 (D.C.A.2, Fla., 1961).

. They referred to that summary decree as “completely voiding the final decree of foreclosure”; argued that “This summary decree held the final decree in the A. M. Douglas foreclosure to be void and all proceedings after the final decree to be void. The effect of this is to vest title in L. L. Davis in all of the lands involved in this suit.”; asserted that “the summary decree * * * held the final decree of foreclosure and all proceedings thereafter to be void”; wailed that “Further procedure in this cause in be *309 half of the defendants below is impossible in the face of this summary decree”; and even moaned that “The court below then allowed the defendants thirty days to file any desired amendment to their counterclaims, but the summary decree in favor of the plaintiff destroys any counter-claims these defendants could file. The effect of the summary decree, and the only possible effect, is to vest legal title to the lands here in litigation in the plaintiff * *

. She argued that an interlocutory appeal was not the correct method of review: ^‘Tlie summary decree * * * is a complete determination of the case. Although the court allowed the defendants permission to amend a counterclaim, the defendants concede that they cannot do so * * * Since it is admitted by the appellants themselves that the decree was a complete determination of the cause, that it vested title to the property in the plaintiff, and that it is impossible for them to proceed further, we are unable to understand how the decree could be called interlocutory. * * * Even if this ease were not completely determined pursuant to Rule 1.36, it appears beyond question that the decree under attack was final even under the older rules of procedure.”

. In 1943 when the summons was served [the words “ad respondendum” were deleted in 1955], Florida Statutes § 47.25, F.S.A. read: “47.25 Service of process upon insane and incompetent persons. The courts of this state shall obtain jurisdiction of insane persons and of such weakminded and physically incapacitated persons as have been found and for whom the court shall have appointed a curator of the estate or a guardian of the person of such incompetent, when the original writ of summons in chancery or summons ad respondendum in law actions, as the case may be, is served (1) by reading the writ or summons to be served to the insane or incompetent person to be served and also to the guardian or other person in whose care or custody such insane or incompetent person may be, (2) or by 'delivery of a copy thereof to such insane or incompetent person and to his guardian, or other person in whose care or custody such insane or incompetent person may be, and by further serving the writ or summons upon the guardian ad litem thereafter appointed by the court to represent said insane or incompetent person; provided, that service of process on the guardian ad litem may be dispensed with where such guardian ad litem voluntarily appears in any proceeding in which he may have been appointed to act as guardian ad litem for any insane or incompetent person.”

. Mitchell v. Brown, 114 So.2d 178 (D.C.A. 1, Fla., 1959).

. Brown v. Mitchell, 119 So.2d 385 (S.C. Fla., 1960).

. “47.47 Return of execution of process. All officers to whom process shall be directed shall note upon the same the time when it comes to hand, the time when it was executed, the manner of execution, and the name of the person upon whom it shall be executed, and if such person be served in a representative capacity, the position occupied by Mm. A failure to set forth the foregoing facts shall invalidate the service, but the return shall be amendable so as to state the truth at any time upon application to the court from which the process issued, and upon such amendment the service shall be as effective as if the return had originally stated such facts. A failure to state said facts in the return shall' subject the officer so failing to a fine not exceeding ten dollars, at the discretion, of the court.”

. State ex rel. Brown v. Wigginton, 125 So.2d 881 (S.C.Fla., 1960).

. Mitchell v. Brown, 128 So.2d 8 (D.C.A. 1, Fla., 1961).

. Case No. D-95.

. Case No. 40,042,